# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERRI L. RICHARDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-10-306-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Claimant Terri L. Richardson requests review of the decision of the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the decision of the Commissioner is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for that of the Commissioner. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on April 8, 1961, and was forty-eight years old at the time of the administrative hearing. She has a high school education and has past relevant work as trailer truck driver and sewing machine operator (Tr. 645). The claimant alleges inability to work since February 23, 2004 due to diabetes, a learning disability, and a leg injury (Tr. 119).

## Procedural History

The claimant applied on October 25, 2005, for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Mack A. Cherry conducted an administrative hearing and determined that the claimant was not disabled in an opinion dated September 7, 2007. The Appeals Council denied review, but this Court reversed the Commissioner's decision in Case No. CIV-08-78-SPS and remanded the case with instructions to properly analyze the treating source opinion. ALJ Glenn A. Neel held another administrative hearing and again found that the claimant was not disabled in a written opinion dated January 27, 2010. The Appeals Council denied review, so the ALJ's January 27, 2010 opinion is the

final decision of the Commissioner for purposes of appeal.  *See* 20 C.F.R. §§ 404.981 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found that the claimant had severe impairments (diabetes, arthritis, obesity, learning disorder, depression, and history of uterine cancer) but retained the residual functional capacity ("RFC") to perform light work, with the following limitations: (i) she can never operate foot controls or crawl or climb; (ii) she can occasionally bend, stoop, crouch, and kneel; (iii) she must avoid temperature extremes and exposure to hazardous conditions, *i. e.*, moving machinery, unprotected heights, etc.; and (iv) she is limited to simple work tasks and some low-level detailed tasks (Tr. 640).  The ALJ found that although the claimant could not return to any past relevant work, she was nevertheless not disabled because there were other jobs she could perform, *i. e.*, toll collector, cleaner/housekeeper, and hand bander (Tr. 645).

## Review

The claimant contends that the ALJ erred in determining that she had the RFC to perform light work.  The Court disagrees, and the decision of the Commissioner must be affirmed.

On February 23, 2004, the claimant presented to Grady Health System Emergency Care Center in Atlanta, Georgia after her legs were run over by a tractor trailer (Tr. 327).

The x-rays taken at that time revealed no fractures or dislocation, and an ultrasound of the bilateral lower extremities showed that claimant had "normal compressibility of the lower extremity veins . . . [and] normal flow and augmentation bilaterally" (Tr. 334). On March 5, 2004, she was admitted to Baptist Hospital in Nashville, Tennessee because of itching and severe pain in her left leg related to the accident (Tr. 345). By March 25, 2004, claimant was complaining of numbness in her right toes and just below her right knee (Tr. 409). On April 19, 2004, the claimant was "cleared to perform all job functions associated with regular job duties (Tr. 433).

Consultative examiner Dr. Thelma Foley, Ed. D. evaluated the claimant for mental health-related impairments on November 30, 2004 (Tr. 500-503). The claimant reported learning problems requiring special education while in school but indicated that she did graduate from high school (Tr. 500). She also reported pain in her lower back, numbness in her left leg, and swelling in her right knee and ankle (Tr. 500-01). She indicated she had never received psychiatric treatment (Tr. 501). The claimant reported that she was homeless and "traveling around in a truck with a friend" (Tr. 502). Objective testing revealed her intelligence was in the borderline range, and this was Dr. Foley's diagnostic impression at the time (Tr. 503).

Dr. Robert Paul, Ph.D. conducted a review of claimant's medical records and completed a Psychiatric Review Technique (PRT) in December 2004, in which he found that claimant's borderline intellectual functioning caused moderate difficulties in

maintaining concentration, persistence, or pace (Tr. 511, 520).  Dr. Paul also completed a Physical Residual Functional Capacity Assessment in which he found that claimant was moderately limited in her ability to understand and remember detailed instructions, her ability to carry out detailed instructions, and her ability to maintain attention and concentration for extended periods (Tr. 524).

In a letter dated August 15, 2005, Susan M. Johnson, M.S., P.L.P.C. wrote that she had been treating claimant for about two months (Tr. 529).  During sessions, claimant reported to Ms. Johnson that she experienced chronic back and leg pain and suffers from depression and difficulty sleeping (Tr. 529).  Ms. Johnson also related that she had observed the difficulties claimant has when walking and getting up from a seated position (Tr. 529).

On February 25, 2008, the claimant was sent for a second consultative examination regarding her mental health impairments and was examined by state consultative physician Dr. Kathleen Ward, Ph.D. (Tr. 810-13).  The claimant related that she experiences pain from her shoulder blade down to her lower right leg and that her "right knee hurts and her left knee pops with pain" (Tr. 810).  Further, the claimant stated that she has good and bad days, and that her bad days occur about once or twice a week (Tr. 810).  The claimant reported taking citalopram, losartan, naproxen, gemfibrozil, metformim, postassium chloride, furosemide, glyburide, and vytorin (Tr. 811).  Dr. Ward's diagnostic impression was that claimant suffered from depression (Tr. 812).

State reviewing physician Dr. Karen Kendall, Ph.D. completed a second PRT on April 29, 2008 (Tr. 831-41).  Dr. Kendall found that claimant suffered from depression characterized by sleep disturbance, decreased energy, difficulty concentrating or thinking, and thoughts of suicide (Tr. 834).  Dr. Kendall further opined that claimant had mild limitation in her ability to maintain social functioning and concentration, persistence, or pace (Tr. 841).

State reviewing physician Dr. Saul A. Juliao, M.D. completed a Physical Residual Functional Capacity Assessment on December 20, 2004.  Dr. Juliao found that claimant was capable of occasionally lifting and/or carrying up to 50 pounds, frequently lifting up to 25 pounds, and standing and/or walking and sitting, respectively, for six hours in an eight hour workday (Tr. 505).

A "Treating Source Statement – Physical Capacities Evaluation" dated September 15, 2006 was submitted by an unknown provider from Carl Albert Indian Hospital (Tr. 588-89).  The non-physician provider opined that claimant was capable of sitting for 1-2 hours, standing/walking for 1 hour, frequently lifting up to 4 pounds, occasionally lifting up to 9 pounds, and rarely lifting up to 19 pounds (Tr. 588).  The provider also noted that claimant was only occasionally capable of bending, rarely capable of crawling, and never capable of squatting and climbing (Tr. 589).

Consultative physician Dr. Matthew McClure, M.D., evaluated the claimant on March 1, 2008.  She reported chronic back and leg pain, and described it as "a sharp,

shooting, stabbing, pain that is constant in nature" (Tr. 814). The claimant also reported that her pain fluctuates throughout the day, and when it is at its peak, she has difficulty getting out of bed and walking (Tr. 814). Upon examination, Dr. McClure found that claimant had normal strength in both the upper and lower extremities, a negative straight-leg raising test, normal heel-to-toe walking, and walked with a minimal limp (Tr. 816). His ultimate conclusion was that claimant suffered from bilateral knee pain with minimal restriction of flexion and mild crepitus, right sacroiliac joint pain upon palpation, type II diabetes, hypertension, mixed hyperlipidemia, and tobacco abuse (Tr. 817).

Reviewing physician Dr. Thurma Fiegel, M.D. also completed a Physical Residual Functional Capacity Assessment form (Tr. 823-30). Dr. Fiegel opined that the claimant could lift/carry twenty pounds occasionally and ten pounds frequently, and stand/walk/sit about six hours in an eight-hour workday (Tr. 824). Dr. Fiegel found no limitations as to pushing or pulling, and no postural, manipulative, visual, communicative or environmental limitations.

Social Security regulations define residual functional capacity as what a claimant can do despite his mental and physical limitations. *Davidson v. Secretary of Health & Human Services*, 912 F.2d 1246, 1253 (10th Cir. 1990). The regulations establish RFC categories based upon the physical demands of various kinds of work. 20 C.F.R. § 404.1567. A claimant's RFC is a medical assessment based primarily upon findings

such as symptoms, signs, and laboratory results.  Medical and non-medical sources must be considered in determining the RFC.  20 C.F.R. § 404.1545(a).

In support of her contention that the ALJ erred in determining she had the RFC to perform light work, the claimant argues only that "the problems she experiences with her lower extremities prevents her from performing the standing and walking necessary for light work" and cites Dr. McClure's findings that she had knee pain, minimal restriction of flexion in the knee, and mild crepitus.  But Dr. McClure did not opine that the claimant had any functional limitations inconsistent with her RFC as determined by the ALJ; the only evidence indicating the claimant *did* have such limitations was the "other source" opinion of the provider from Carl Albert Indian Hospital.  This was the opinion the Court instructed the Commissioner to re-evaluate on remand in Case No. CIV-08-78-SPS, and the ALJ did so in his January 27, 2010 opinion.  It is worth noting in this regard that the claimant does not contend that the ALJ analyzed the "other source" opinion erroneously.

Every other source opinion of record demonstrated that the claimant was capable of performing light work, including the requirement that must be able to stand, walk and sit for a total of six hours in an eight-hour workday.  The ALJ's discussion in his January 27, 2010 opinion clearly indicates that he adequately considered all the medical evidence of record *and* the claimant's testimony (the claimant voices no complaint about the ALJ's credibility determination) in reaching his conclusions regarding the claimant's RFC.  *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive

discussion of the medical record and the testimony in support of his RFC finding.  We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).  The gist of the claimant's appeal is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do.  *See Casias,* 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency.").  *See also Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence.  The decision of the Commissioner is accordingly hereby AFFIRMED.

**DATED** this 30th day of September, 2011.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma